UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KRISTIN L. SEMMLER,

                Plaintiff,

        v.

COUNTY OF MONROE,

                Defendant.

_____

**DECISION AND ORDER**
11-cv-06193 EAW

## INTRODUCTION

Plaintiff Kristin L. Semmler ("Plaintiff") is a former Monroe County employee in its Department of Human Resources.  She filed the instant action on April 15, 2011, alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*, and the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*  (Dkt. 1).  In particular, Plaintiff alleges that during the course of her employment with Defendant the County of Monroe ("Defendant"), she was subjected to "same sex harassment" by a co-worker and that in retaliation for her complaints about this harassment, she was treated poorly, kept on probationary employment status, and ultimately terminated.

Defendant has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 on the following grounds: (1) Plaintiff did not have a good faith, reasonable belief that she was opposing unlawful discrimination; (2) there was no causal connection between

-1-

Plaintiff's complaints and the allegedly retaliatory actions; and (3) Plaintiff failed to comply with New York County Law § 52(1) and New York General Municipal Law §§ 50-e and 50-i with respect to her NYSHRL claim. (Dkt. 17). For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

Plaintiff was provisionally appointed as a Personnel Assistant in the Monroe County Department of Human Resources on September 7, 2007. (Dkt. 17-3 at ¶ 1; Dkt. 21-1 at ¶ 1). Because she was provisionally appointed, Plaintiff was required to take the next civil service examination for her position and to place among the top three interested candidates to be eligible for permanent appointment. (Dkt. 17-3 at ¶ 2; Dkt. 21-1 at ¶ 2). Effective December 15, 2007, Plaintiff was provisionally promoted to the position of assistant manager, though her official title remained Personnel Assistant. (Dkt. 17-3 at ¶¶ 3-4; Dkt. 21-1 at ¶¶ 3-4). The promotion did not affect Plaintiff's provisional status. (Dkt. 17-3 at ¶ 6; Dkt. 21-1 at ¶ 6).

Effective June 8, 2009, Plaintiff was permanently appointed as a Personnel Assistant in the Monroe County Department of Human Resources, subject to a 52-week probationary period. (Dkt. 17-3 at ¶ 7; Dkt. 21-1 at ¶ 7). Plaintiff was required to pass this probationary period in order to become a permanent employee, and she could be terminated for unsatisfactory performance at any time during the probationary period. (Dkt. 17-3 at ¶ 8; Dkt. 21-1 at ¶ 8).

-2-

Plaintiff's supervisor during the entire course of her employment with Defendant was Ann Connell, the Manager of the Civil Service Exam Unit. (Dkt. 17-3 at ¶¶ 9-10; Dkt. 21-1 at ¶¶ 9-10). Ms. Connell's immediate supervisor was Brayton Connard, the Director of Human Resources. (Dkt. 17-3 at ¶¶ 11-12; Dkt. 21-1 at ¶¶ 11-12).

Plaintiff occasionally complained to Ms. Connell about Patty English, a co-worker and Plaintiff's maternal aunt. (Dkt. 17-3 at ¶¶ 13-14; Dkt. 21-1 at ¶¶ 13-14). Plaintiff testified at her deposition that Ms. English helped her obtain her position with Defendant. (Dkt. 21-4, Ex A., at 40:15-17). Ms. Connell did not supervise Ms. English, and Ms. English never supervised Plaintiff. (Dkt. 17-3 at ¶¶ 15-16; Dkt. 21-1 at ¶¶ 15-16).

Plaintiff claims that in the summer of 2008, she found a copy of Ms. English's brother-in-law's résumé mixed in her paperwork. (Dkt. 21-4, Ex A., at 38:16-21, 40:5-6). Plaintiff further claims that she approached Ms. English with the résumé and Ms. English "snatched" it out of her hands and told her it was none of her business and that she should not say anything to anyone about it. (*Id.* at 38:19-39:5). Ms. English allegedly followed up with an email to Plaintiff stating that it was "not [Plaintiff's] place" to tell anyone about the résumé. (*Id.* at 39:8-11). Plaintiff testified that there was nothing else said "in person or by email or letter" between her and Ms. English regarding the résumé incident. (*Id.* at 39:20-23).

Plaintiff further testified that after the résumé incident, "things . . . were not the same" between her and Ms. English. (*Id.* at 40:25-41:4). Ms. English allegedly became

very hostile towards Plaintiff and would allegedly belittle her in front of co-workers. (*Id.* at 41:5-7). On one occasion, Ms. English allegedly told Plaintiff she was unprofessional and asked her who she thought she was, while on another occasion Ms. English allegedly called Plaintiff a bitch. (*Id.* at 41:17-42:6). Plaintiff claims that on other occasions, Ms. English was "very hostile and kind of scolding." (*Id.* at 42:6-7). Plaintiff explained at her deposition that she believed Ms. English's "verbal beratement and hostile gestures" constituted "same sex harassment" because they were "both females" and "it wasn't that a male co-worker was inappropriately harassing [Plaintiff]." (*Id.* at 44:12-45:1). Plaintiff specifically testified that she did not believe that Ms. English was verbally berating her and making hostile gestures because of Plaintiff's gender. (*Id.* at 45:5-9).

Plaintiff claims she complained to Ms. Connell about Ms. English's conduct on "several occasions." (Dkt. 21-1 at ¶ 17). Plaintiff admits that she did not ask Ms. Connell to take any action and that she was "satisfied with Connell's response to her reports of English's harassing conduct." (*Id.* at ¶18). Plaintiff also allegedly complained to Mr. Connard on September 28, 2009. (*Id.* at ¶ 19).

Plaintiff alleges that she also had a meeting with Ronald House, the Affirmative Action Manager for the Monroe County Department of Human Resources, on September 28, 2009. (Dkt. 21-3 at ¶ 28). Plaintiff claims that during this meeting, Mr. House told her that she should not pursue her claims of harassment and that if she did so, it would go into her permanent work record and place her job in jeopardy. (*Id.* at ¶¶ 29-30).

-4-

Plaintiff filed a charge of same sex harassment with the Equal Employment Opportunity Commission (the "EEOC") on October 2, 2009. (Dkt. 21-4, Ex A., at 43:20-25). The basis of this charge was the "verbal beratement and hostile gestures" of Ms. English described above. (*Id.* at 44:7-14). After October 2, 2009, Ms. English kept her distance from Plaintiff and did not verbally harass her or make hostile gestures toward her. (Dkt. 17-3 at ¶ 23; Dkt. 21-1 at ¶ 23).

Following her complaints to Ms. Connell, Mr. Connard, and Mr. House and the filing of her EEOC charge, Plaintiff alleges that she was subjected to "retaliatory harassment." (Dkt. 21-3 at ¶¶ 34, 37). She alleges that Ms. Connell "scolded Plaintiff constantly and belittled her in front of co-workers." (*Id.* at ¶ 38). On one occasion, Ms. Connell allegedly asked Plaintiff to train a co-worker after her normal work hours, then confronted Plaintiff for doing so and told her she was not going to approve Plaintiff's overtime. (*Id.* at ¶ 37).

Plaintiff filed a second EEOC charge on October 9, 2009, claiming that she had been subjected to retaliation for having engaged in protected activity. (Dkt. 21-3 at ¶ 39). Plaintiff claims that Ms. Connell's treatment of her worsened following her filing of the second EEOC charge. (*Id.* at ¶ 41). Ms. Connell allegedly began "watching Plaintiff all the time, questioning her every move, no matter how minor." (*Id.* at ¶ 42). Ms. Connell also allegedly changed Plaintiff's comments and ratings on a 2009 annual performance evaluation form. (*Id.* at ¶ 44). Plaintiff alleges that she had been promised that she would

be taken off probation early, but that on December 21, 2009, Ms. Connell informed Plaintiff that she no longer intended to remove Plaintiff from her probationary employment status. (*Id.* at ¶ 47).

Plaintiff claims the EEOC held a fact-finding conference with respect to her complaints on March 23, 2010. (Dkt. 21-3 at ¶ 48). Ms. Connell allegedly attended this fact-finding conference. (*Id.* at ¶ 49).

When a probationary employee of the Monroe County Department of Human Resources approaches the end of her probationary period, the employee's supervisor will make a recommendation as to whether the employee should be passed or failed. (Dkt. 17-3 at ¶ 26; Dkt. 21-1 at ¶ 26). As Plaintiff's supervisor, Ms. Connell authored a memo to Mr. Connard dated May 14, 2010, in which she recommended that Plaintiff not be passed on her probationary period and that her employment with Defendant be terminated. (Dkt. 17-3 at ¶ 28; Dkt. 21-1 at ¶ 28). Ms. Connell's memo states that Plaintiff engaged in insubordination and demonstrated a lack of good judgment. (*Id.*). The following facts set forth in Ms. Connell's memo are uncontested: Ms. Connell, on an unstated date, asked Plaintiff to prepare documentation related to the job performance of a probationary employee, Colleen Ross. (Dkt. 17-3 at ¶ 30.1; Dkt. 21-1 at ¶ 30.1). When Ms. Connell asked Plaintiff for this information on a second occasion, Plaintiff told Ms. Connell that she "did not want to get involved." (Dkt. 17-3 at ¶ 30.2; Dkt. 21-1 at ¶ 30.2). Ms. Connell never received the requested documentation from Plaintiff. (Dkt. 17-3 at ¶ 30.3;

-6-

Dkt. 21-1 at ¶ 30.3).    Plaintiff "could not recall" whether the other allegations of insubordination and lack of judgment set forth in Ms. Connell's memo were accurate, but did not deny them.    (Dkt. 17-3 at ¶¶ 31-33; Dkt. 21-1 at ¶ 31-33).    Plaintiff was terminated by Defendant effective June 2, 2010. (Dkt. 17-3 at ¶ 36; Dkt. 21-1 at ¶ 36).

Plaintiff commenced this lawsuit on April 15, 2011. (Dkt. 1). Plaintiff concedes that she never served a notice of claim upon Defendant prior to the commencement of this action. (Dkt. 17-3 at ¶ 37; Dkt. 21-1 at ¶ 37). Defendant answered the complaint on May 3, 2011. (Dkt. 4).    Discovery was completed as of November 5, 2012.  (Dkt. 14). Defendant filed the instant motion for summary judgment on February 19, 2013. (Dkt. 17). Plaintiff filed her opposition to the summary judgment motion on May 6, 2013, and Defendant filed its reply papers on June 21, 2013.  (Dkt. 21, 23).[1]  This case was transferred to the undersigned on February 21, 2014.  (Dkt. 26).

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Rule 56 "mandates

---

[1]    Plaintiff was represented by counsel at the time of the filing of her complaint and opposition submitted in response to the motion for summary judgment. Plaintiff's counsel was subsequently permitted to withdraw due to her suspension. (Dkt. 24).

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   Defendant's Motion for Summary Judgment

Plaintiff alleges unlawful retaliation in violation of both Title VII and the NYSHRL. (Dkt. 1). As a threshold matter, Defendant contends it is entitled to summary judgment on Plaintiff's NYSHRL claim because Plaintiff failed to serve a notice of claim prior to commencing this action. Plaintiff does not directly respond to this argument, instead stating that she "will concede to withdraw her NYSHRL . . . claim as it is

duplicative of her Title VII claim." (Dkt. 21 at 14). Plaintiff's failure to file a notice of claim is fatal to her NYSHRL claim. *See Baker v. Cnty. of Monroe*, 47 F. Supp. 2d 371, 375 (W.D.N.Y. 1999). Defendant is therefore entitled to summary judgment on Plaintiff's NYSHRL retaliation claim on this independent basis.[2]

Title VII retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this burden shifting analysis:

> First, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden in this regard is *de minimis*, and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. If the plaintiff sustains this initial burden, a presumption of retaliation arises. The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If so, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action. A plaintiff can sustain this burden by proving that a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action].

*Hicks v. Baines*, 593 F.2d 159, 164-165 (2d Cir. 2010) (internal citations and quotations omitted).

---

[2]    Even if Plaintiff had filed a notice of claim, summary judgment on her NYSHRL claim would be appropriate because the same general analysis applies to retaliation claims under both the NYSHRL and Title VII. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

A plaintiff cannot establish a *prima facie* case of retaliation unless she has engaged in protected activity. To qualify as protected activity, an employee's complaint must have been based on "a good faith, reasonable belief that [she] was opposing *an employment practice made unlawful by Title VII*." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quotation omitted and emphasis added). "[M]ere subjective good faith belief is insufficient[;] the belief must be reasonable and characterized by *objective* good faith." *Id.* at 16 (quotation omitted and emphasis in original). The reasonableness of the plaintiff's belief is assessed in light of the totality of the circumstances, and "[a] plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 14.

Here, Plaintiff's complaints to Ms. Connell, Mr. Connard, Mr. House, and the EEOC all sprang out of Ms. English's alleged "verbal beratement" and "hostile gestures" towards Plaintiff. In particular, Plaintiff claims that Ms. English snatched a résumé out of Plaintiff's hands on one occasion, called her a bitch on one occasion, called her unprofessional on one occasion, and was generally "hostile" and "scolding" towards her. (Dkt. 21-4, Ex A., at 38:16-42:7).

"Title VII does not set forth a general civility code for the American workplace." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (quotation omitted). Title VII prohibits discrimination because of gender, and workplace harassment is not

discriminatory simply "because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *see also La Grande v. DeCrescente Distrib. Co., Inc.,* 370 F. App'x 206, 210 (2d Cir. 2010) (offensive, vulgar comments did not constitute a hostile work environment based on plaintiff's gender).   A Title VII plaintiff  "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] . . . because of . . . sex." *Oncale*, 523 U.S. at 81 (quotation omitted, alterations in original).

No reasonable person could have believed that Ms. English's conduct, as described by Plaintiff, violated Title VII's prohibition on gender-based discrimination.   The only incident claimed by Plaintiff that arguably has a sex-based component is Ms. English allegedly calling Plaintiff a bitch.   No reasonable person could have believed that this single incident of sexually inappropriate language by a co-worker constituted unlawful sexual harassment.   *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (reversing denial of summary judgment where plaintiff complained that she was exposed to a sexually explicit comment on one occasion because "[n]o reasonable person could have believed that the single incident . . . violated Title VII's standard");   *Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 619 (2d Cir. 2009) (affirming grant of summary judgment on retaliation claim where only one incident complained of by plaintiff (her female supervisor having kissed her on the lips) had a sexual component and

-11-

this one incident could not "reasonably amount to 'sexual harassment' in violation of Title VII").

Not only would a reasonable person not have believed that Ms. English's actions constituted gender discrimination, but Plaintiff herself admitted that she did not believe Ms. English was hostile towards her based on her gender. (Dkt. 21-4, Ex A., at 45:5-9). Plaintiff made her position even clearer by explaining that she considered Ms. English's actions "same sex harassment" solely because Ms. English was a woman and not a man. (*Id.* at 44:22-45:2). Plaintiff's mistaken belief that all "harassment" by a female co-worker constituted "same sex harassment" does not amount to a good faith, reasonable belief that Defendant was engaged in an employment practice prohibited by Title VII. *See Kelly*, 716 F.3d at 15-16 (plaintiff's belief that company vice-president's affair with female subordinate was "sexual favoritism" and "demeaning to women" was not a good faith, reasonable belief).

Plaintiff attempts to create an issue of fact on this point by submitting in opposition to Defendant's motion a declaration in which she claims that she "did in fact believe that the harassment English subject[ed] [Plaintiff] to was based on [Plaintiff's] sex." (Dkt. 21-3 at ¶ 21). Plaintiff's submission runs afoul of the "sham issue of fact" doctrine, "which prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Prods Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013). Plaintiff testified at her deposition that she

did not believe that Ms. English's actions were based on Plaintiff's gender. She cannot now create an issue of fact on this point by submitting an affidavit that, without elaboration or explanation, simply attempts to contradict this earlier sworn testimony.

The record in this case establishes that Plaintiff did not believe that she had been discriminated against on the basis of her gender and that no reasonable person could have held such a belief. Plaintiff's complaints to Ms. Connell, Mr. Connard, Mr. House, and the EEOC were thus not based on a good faith, reasonable belief that Title VII (or the NYSHRL) had been violated and cannot constitute protected activity. Plaintiff cannot establish a *prima facie* case of retaliation and Defendant is therefore entitled to judgment in its favor.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of Court is instructed to enter judgment in Defendant's favor and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: August 6, 2014
       Rochester, New York

-13-